**In re Laura Anne AIELLO, a/k/a Laura Anne Power, Debtor.**

**Laura Anne Aiello, a/k/a Laura Anne Power, on behalf of herself and others similarly situated, Plaintiffs,**

**v.**

**Providian Financial Corporation, f/k/a Providian Bancorp, Inc., Defendant.**

**Bankruptcy No. 96 B 31162. Adversary No. 98 A 933.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 25, 1999.

Gary S. Caplan, Chicago, IL, for Plaintiff.

Daniel J. Edelman, Chicago, IL, for Defendant.

Andrew J. Maxwell, Chicago, IL, Trustee or Other Attorneys.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the Defendant Providian Financial Corporation's Motion for Summary Judgment on the Debtor's Adversary Complaint seeking damages under 11 U.S.C. § 362(h) for a violation of the automatic stay. For the reasons stated below, the motion for summary judgment is granted. The following shall constitute the Court's Findings of Fact and Conclusions of Law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b) and 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) since it concerns the administration of the estate.

## II. FACTUAL BACKGROUND

The Debtor Laura Anne Aiello (hereinafter "Debtor") filed an individual chapter 7 bankruptcy petition on November 20, 1996. A discharge order was entered on her behalf on March 3, 1997. The Defendant Providian Financial Corporation (hereinafter "Providian") is a publicly traded corporation which owns various subsidiaries which are engaged in the business of issuing and servicing credit cards.

The Debtor filed an adversary complaint asserting that Providian violated the automatic stay by sending a threatening and intimidating letter to her post-petition with the intent to coerce her into signing a reaffirmation agreement.[1] She claims that upon receipt of Providian's letter she experienced shock and emotional distress and that Providian intended it to cause shock and emotional distress. The complaint seeks compensatory and punitive damages under 11 U.S.C. § 362(h) for this alleged injury and demands trial by jury.

---

1. The Debtor filed a complaint against Providian in the United States District Court for the Northern District of Illinois and the District Court entered an order referring the matter to this Court. The complaint was filed as a class action alleging that Providian engaged in a policy and practice of sending threatening letters to customers who filed for bankruptcy accusing them of fraud, threatening to file non-dischargeability complaints against them, and offering to enter into a reaffirmation agreement as an alternative.

The Debtor sought to bring the complaint on behalf of all bankruptcy debtors who improperly received such a letter.

Simultaneously with the issuance of this memorandum opinion, the Court issued an opinion which denied certification of the class action under Federal Rule of Civil Procedure 23 and granted Providian's motion to strike the class allegations. The issue of summary judgment is therefore applicable only to the Debtor Laura Aiello since she is the only remaining plaintiff.

Providian has filed a motion for summary judgment on the issue of actual damage under 11 U.S.C. § 362(h). It argues that the emotional distress claimed by the Debtor cannot constitute "actual damage" within the meaning of § 362(h) because she sustained no out-of-pocket costs or other physical injury and a showing of emotional distress alone is not sufficient to recover damages under this provision.

The letter that Providian sent to the Debtor states in part:

"It is our belief that, due to the amounts and timing of these charges, you did not have the ability or the intent to repay this debt at the time the charges were made. As you know, the object of a Chapter 7 bankruptcy petition is to effect a discharge of most of the debts listed on the bankruptcy schedules. However, we can file a complaint with the court objecting to discharge of our debt if we believe that the debt was incurred through false pretenses, false representations, or actual fraud as defined in the Bankruptcy Code 11 U.S.C. § 523(a)(2). If we are able to show that you did not have the intent to repay our debt at the time the charges were made we may be able to obtain a fraud judgment against you. Your request to discharge our debt may then be denied entirely, meaning that you would have to repay all or a portion of the amount to which we objected. A fraud judgment can have many negative implications in addition to your obligations to pay the entire amount of the judgment. We do not wish to file a complaint to determine dischargeability of this debt unless necessary and we think it would be in the best interest of all concerned to avoid disputing this matter in court. We propose that you enter into a Reaffirmation Agreement as a means of compromising this matter. Reaffirming a debt means that you sign a legally enforceable document which states that you promise to repay all or a portion of the debt. We propose that you repay the sum of $1,101.71 with interest at the rate of 12.0% per annum. This payment plan would require 36 monthly payments of $33.57. If we do not receive the *entire* signed agreement by January 24, 1997, we reserve the right to withdraw this settlement offer and refer the file to our attorney to file suit for the full objection amount plus costs."

The letter was sent directly to the Debtor and was not copied to her attorney even though her bankruptcy petition disclosed that she was represented by counsel.

Sometime after the letter was sent, Providian called the Debtor three times. Upon receiving the letter, the Debtor immediately contacted and met with her attorney regarding Providian's conduct. She did not enter into a reaffirmation agreement with Providian. Providian did not follow-up the letter by filing a non-dischargeability action against the Debtor.

The complaint fails to identify the amount of damages sought by the Debtor. Paragraphs 16 and 17 state only that the Debtor "experienced shock and emotional distress upon reading [Providian's letter]" and "Providian intended [the letter] to cause shock and emotional distress in the reader." The prayer for relief requests only "appropriate compensatory and punitive damages, attorney's fees, litigation expenses and costs of suit, and such other or further relief as the Court deems appropriate." There are no other paragraphs in the complaint addressing the damages sought.

Providian's Statement of Material Facts under Local Rule 402(M) states that the Debtor is seeking $7,000, a number apparently provided by the Debtor during discovery. The Debtor, however, denies this allegation and states that the damages sought are stated in her complaint. She admits that she incurred no monetary (out-of-pocket) damages whatsoever, including attorney's fees, that she did not see a doctor, counselor or religious leader to help her deal with any emotional distress caused by Providian's letter, and that her emotional distress lasted only until from January 3, 1997 through March 27, 1997 when her bankruptcy case was closed. *See* Paras. 24–31 and responses thereto in Debtor's Local Rule 402(N) Statement of Facts.

In response to the summary judgment motion, the Debtor filed a statement of additional material facts under Local Rule 402(N).

Providian filed a response to these additional facts and sought to have various paragraphs stricken from the additional facts on the grounds that they were not relevant to the issue of actual damages to the Debtor. The Court granted that motion in part and struck paragraphs 17–37, 39 and 42–55 from the additional facts. The Debtor then sought to have certain paragraphs of the additional facts deemed admitted on the grounds that Providian failed to properly respond to the alleged fact. The Court granted this motion in part in an order dated February 22, 1999, and deemed admitted paragraphs 10–11, 13–16 and 38.

Paragraphs 13–16, which are deemed admitted, provide as follows:

> "The plaintiff cried, felt nauseous and scared, and the letter caused her to quarrel with her husband. The Plaintiff believed that Providian had sued her as the reaffirmation agreement is drafted to look like a legal pleading. Because of Providian's phone call, Plaintiff would not answer any telephone calls until after the discharge order was entered. Even after her meeting with her attorney, Ms. Aiello was still frightened."

Paragraph 12, which states, "Upon receiving this letter, plaintiff experienced shock and emotional distress," is denied by Providian.

### III. DISCUSSION

### A. Legal Standards Governing Summary Judgment

The purpose of summary judgment under Federal Rule of Civil Procedure 56 (adopted by Federal Rule of Bankruptcy Procedure 7056), is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Farries v. Stanadyne/Chicago Division,* 832 F.2d 374, 378 (7th Cir.1987); *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Assoc. of Indianapolis,* 806 F.2d 146, 149 (7th Cir.1986). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322,

106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Matsushita Elect. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990). The existence of factual disputes is sufficient to deny summary judgment only if the disputed facts are outcome determinative. *Jones Truck Lines, Inc. v. Republic Tobacco, Inc.,* 178 B.R. 999, 1003 (Bankr. N.D.Ill.1995). The burden is on the moving party to show that there is no such factual dispute. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *In re Chicago, Missouri & Western Ry. Co.,* 156 B.R. 567 (Bankr. N.D.Ill.1993). This burden is met when the record, as a whole, does not lead a rational trier of fact to find for the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." The respondent may not rest upon mere allegations or denials in its pleadings. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (citations omitted).

### B. Application of Summary Judgment Standards

■ Applying these standards to the instant case, the Court finds that summary judgment is proper and Providian's motion should be granted. The adversary complaint in this case is premised on a violation of the automatic stay provisions of 11 U.S.C. § 362. Section 362(a)(6) prohibits "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title". Subsection (h) further provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages." Thus, there are two components to a cause of action under § 362(h). The first is proof of a violation of the stay and the second is entitlement to compensation. In order to be entitled to compensation, the debtor must further show that the violation was wilful and that she sustained actual dam-

ages as a result. *In re McHenry*, 179 B.R. 165, 167 (9th Cir. BAP 1995); *In re Ayscue*, 1995 WL 908383, *2 (E.D.Va.1995).

Providian seeks summary judgment on the grounds that the Debtor cannot demonstrate any actual injury as a matter of law. It argues that § 362(h) requires an actual injury which goes beyond emotional distress. Providian characterizes the Debtor's alleged distress as fleeting and inconsequential, lasting only a short time, and asserts that the $7,000 damage calculation is based on speculation, guess and conjecture. It argues that as a matter of law emotional distress does not constitute an actual injury and that this is particularly true when (1) there is no corroborating medical evidence and (2) there is no related out-of-pocket cost or other tangible damage.

■ There are numerous cases which have addressed the requirement of actual damage under § 362(h). It is clear that actual damage in the form of some out of pocket loss or expense must be proven with reasonable certainty and that it cannot be speculative or based on conjecture. *In re Archer*, 853 F.2d 497, 499–500 (6th Cir.1988); *In re Sumpter*, 171 B.R. 835, 844 (Bankr.N.D.Ill.1994); *In re Washington*, 172 B.R. 415, 426–27 (Bankr. S.D.Ga.1994). There is, however, a split of authority on whether a debtor is entitled to recover other damages, such as for emotional distress or attorney's fees and costs, under § 362(h).

■ With respect to fees and costs, the majority position requires proof of some additional loss in order to recover fees and costs. The Eighth Circuit Court of Appeals held "the time expended bringing the motion for a temporary restraining order and contempt sanctions, in the absence of any other damage, is [not] the type of damage contemplated by section 362(h)." *Lovett v. Honeywell, Inc.*, 930 F.2d 625, 629 (8th Cir.1991); *In re Ayscue*, 1995 WL 908383, *2 (E.D.Va.1995)(citing additional cases); *In re Whitt*, 79 B.R. 611, 615–616 (Bankr.E.D.Pa. 1987). *See also In re Diviney*, 211 B.R. 951, 967 (Bankr.N.D.Okla.1997); *In re Sumpter*, 171 B.R. 835, 844–45 (Bankr.N.D.Ill.1994); *In re Alberto*, 119 B.R. 985, 995 (Bankr. N.D.Ill.1990); *In re Davis*, 74 B.R. 406, 411

(Bankr.N.D.Ohio 1987). A few cases have allowed an award of fees even though there was no other actual damage when it was necessary for the debtor to seek relief in order to stop an on-going violation of the stay. *In re Knaus*, 889 F.2d 773, 776 (8th Cir.1989). The reasoning underlying these cases, however, is applicable only when the creditor's conduct is on-going and egregious. *See, e.g., In re McHenry*, 179 B.R. 165, 168 (9th Cir. BAP 1995); *In re Cusanno*, 17 B.R. 879, 882 (Bankr.E.D.Pa.1982). Thus, the general rule of law is that absent some out-of-pocket injury or some extreme and on-going misconduct by the creditor, fees and costs will not be allowed under § 362(h).

The decisions addressing damages for emotional distress under § 362(h) take a different approach by focusing on the requisite proof of emotional damage. There are only a few instances where the courts have actually granted such relief. *See In re Flynn*, 185 B.R. 89 (S.D.Ga.1995); *In re Fisher*, 144 B.R. 237 (Bankr.D.R.I.1992); *In re Carrigan*, 109 B.R. 167 (Bankr.W.D.N.C.1989); *In re Wagner*, 74 B.R. 898 (Bankr.E.D.Pa.1987). The District Court in *Flynn* held that medical testimony was not necessary to show entitlement to an award of damages for emotional distress in the amount of $5,000. In *Flynn*, the IRS wrongfully imposed a levy on the debtor's checking account which resulted in a freeze on her account for seven days, forced her to cancel her eleven-year-old son's birthday party, caused her check for groceries to be refused at her local store, and caused her to worry that other checks would be dishonored and returned by her bank. 185 B.R. at 92–93. Thus, it was "clear that [the debtor] suffered emotional harm as a direct result of the violation of the automatic stay and the resulting freeze on her checking account." *Id.* at 93. "All of these events justify an award of damages for emotional distress regardless of whether medical testimony is provided." *Id.*

Similarly, in *Carrigan*, 109 B.R. 167 (Bankr.W.D.N.Ca.1989), the Bankruptcy Court held that the debtor's claim for emotional distress was an actual injury that was somewhat imprecise, but it was real and entitled him to an award of $1,000. "Assessing

the value of this type of injury is not susceptible to a formula or precise measurement. However, the outrageous nature of the [creditor's] conduct is sufficiently strong to produce the anxiety expressed by the debtor." 109 B.R. at 171–172. The creditor went to the debtor's home on a Sunday evening and confronted him using loud and abusive language. He refused to leave when asked, used profanity and made an obscene gesture to the debtor and his wife.

The court found that these acts were a knowing, flagrant violation of the stay which amounted to a breach of the peace and could easily have escalated to violence. Thus, it accepted the debtor's testimony that the incident caused him great fear, stress anxiety and humiliation and held that "although not scientifically calculable, that damage should be compensable." *Id.* at 170. The creditor's conduct in *Carrigan* was so extreme even though there was no other "actual damage" or out-of-pocket loss claimed by the debtor, the court called the emotional distress an actual injury and awarded attorney's fees and costs, punitive damages of $5,000, discharged the creditor's claim in full and avoided the lien on the debtor's real property securing that claim.

In *Wagner*, 74 B.R. 898 (Bankr.E.D.Pa. 1987), the court found that, although the debtor produced very little evidence that he suffered any actual harm as a result of the creditor's actions, it was apparent from the court's observations of his testimony that he experienced some shock, alarm and fear while the incident took place. 74 B.R. at 905. The creditor approached the debtor at his home on two occasions. On the first occasion, the creditor threatened to take back its collateral and stated that the court-ordered stay meant nothing to him. On the second occasion, the creditor burst into the debtor's home at night, shut off the lights, acted as if he were holding a gun to the debtor's head, and screamed, "I'm not playing, I'm not playing, next time I'm going to blow your brains out, bring a gun and I'll blow your brains out." The debtor also testified that he saw the debtor park at his house on a another day and point at him. The next day he discovered a license plate missing from one of the trucks that was the creditor's collateral. *Id.* at 900–901. Based on these actions, the court awarded the debtor $100 in "actual, compensatory damages" even though there was no evidence of the harm suffered other than the debtor's testimony and the court's observations of his demeanor. The court also awarded $500 in punitive damages and allowed attorney's fees upon proper proof thereof.

In *Fisher*, 144 B.R. 237 (Bankr.D.R.I. 1992), the court did not discuss the issue of emotional damage other than to allow $1,000 for the embarrassment and distress intentionally inflicted upon her. The creditor's actions, however, in repossessing her car at the section 341 meeting of creditors despite the strenuous objections of her counsel and the chapter 7 trustee, and accusing the debtor of criminal conduct if she refused to consent to the repossession, were sufficiently egregious to justify a finding of emotional injury. *Id.* at 238.

A few other cases have allowed nominal amounts for emotional distress by calling it an actual damage even though the evidence presented established only aggravation and inconvenience. See *In re Withrow*, 93 B.R. 436, 438 (Bankr.W.D.N.C.1988)(allowing $100 in nominal actual damages based on evidence of minor aggravation and allowing fees and costs); *In re Whittaker*, 92 B.R. 110, 115 (E.D.Pa.1988)(affirming award of $20 in nominal damages for substantial inconvenience due to the shut-off of her electricity).

The majority of the courts that have addressed this issue, however, have denied damages for emotional distress where there is no medical or other hard evidence to show something more than a fleeting or inconsequential injury. See, e.g., *In re McHenry*, 179 B.R. 165 (9th Cir. BAP 1995); *In re Diviney*, 211 B.R. 951 (Bankr.N.D.Okla. 1997); *In re Washington*, 172 B.R. 415 (Bankr.S.D.Ga.1994); *In re Crispell*, 73 B.R. 375 (Bankr.E.D.Mo.1987). See also *In re Demp*, 23 B.R. 239, 240 (Bankr.E.D.Pa.1982); *In re Cusanno*, 17 B.R. 879 (Bankr.E.D.Pa. 1982). In *Diviney*, the only evidence presented regarding the debtors' alleged emotional distress suffered as a result of the wrongful repossession of the debtor's vehicle

was testimony that conversations with the creditor became heated at times and that profanity was used in at least one instance. 211 B.R. at 967–68. There was no supporting medical evidence to bolster the debtors' claims of emotional distress, humiliation and anguish. The court therefore held that the record did not justify an award of damages for emotional distress. *Id.* at 967–68. It noted that some cases had allowed emotional damages absent medical evidence to support the claims, but held that the cases of *Flynn* and *Carrigan* (discussed above) were so factually dissimilar that they were inapplicable to the facts before the court. *Id.*

In *McHenry,* 179 B.R. 165 (9th Cir. BAP 1995), the debtors claimed "actual 'non-economic' damages for violation of their 'fundamental bankruptcy right to be left alone' ". 179 B.R. at 168. This claim was based upon the creditor's act of repossessing their vehicle without obtaining relief from the stay after the debtors' told the creditor they would not be reaffirming the debt and would surrender the car. The court held that there was no actual damage, only inconvenience and annoyance, because the debtors' fully intended to return the car. *Id.* at 168. The court distinguished several other cases allowing lost wages and attorney's fees on the grounds that in this case there was no egregious misconduct and no need to bring the matter to court to stop an on-going violation of the stay.

Likewise, in *Washington,* 172 B.R. 415 (Bankr.S.D.Ga.1994), the court found the debtor's testimony that she suffered mental anguish as a result of an IRS levy on her wages to be insufficient to establish actual damages under § 362(h). 172 B.R. at 427. The debtor testified that she was embarrassed when she was told about the levy, but no other evidence was submitted. The court held that, absent further proof, any mental anguish caused by this event was fleeting and inconsequential. *Id.* It noted that although the debtor lost wages to appear in court, she never lost any wages as a result of the levy. The court awarded the lost wages, allowed attorney's fees and allowed punitive damages in the amount of $10,000, but it did not allow any recovery for mental anguish.

In *Crispell,* 73 B.R. 375 (Bankr.E.D.Mo. 1987), the court denied a claim for emotional distress and humiliation allegedly suffered when the bank froze the debtors' bank account and checks were returned unpaid. 73 B.R. at 380. The court noted that the debtors did suffer some embarrassment but they did not require medical treatment. Therefore, it held that their distress was not compensable because it was fleeting, inconsequential and medically insignificant. *Id.* The court did allow $75 in actual fees for improper bank charges but did not allow attorney's fees to be awarded to the debtors.

■■■ The rule of law derived from these cases is that there must be some medical or other corroborating evidence to support the debtor's claim which shows that the debtor suffered something more than just fleeting and inconsequential distress, embarrassment, humiliation and annoyance. However, if the creditor's conduct is so egregious and extreme that one would normally expect emotional distress to occur, then the court may allow such damages without requiring additional evidence if it finds the debtor's testimony to be credible. The cases denying damages for emotional distress are not inconsistent with those that allowed it. They are just factually distinguishable from the extreme nature of the creditor's misconduct in the other cases.

■ Applying this rule to the instant case, it becomes clear that the Debtor has not and cannot present evidence to justify an award of damages for emotional distress. Even though Providian is deemed to have admitted that the debtor cried, felt nauseous and scared, quarreled with her husband, was frightened, and refused to answer phone calls until after her discharge, this evidence only establishes a fleeting and inconsequential anguish which did not require any medical treatment. It does not establish an actual injury warranting compensation. Furthermore, Providian's conduct in sending the letter was not so extreme and outrageous that this court can presume that emotional distress would naturally follow. This case is clearly distinguishable from the decisions allowing emotional damages when creditors physically accosted the debtors in their

homes and verbally or physically abused and threatened them. Therefore, this Court finds as a matter of law that the debtor can not prove under the admitted facts that she is entitled to damages for emotional distress.

■ This holding is also supported by Illinois case law governing the tort of intentional infliction of emotional distress. In order to state a cause of action for intentional infliction of emotional distress, a party must allege (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) and the conduct did in fact cause severe emotional distress. *Doe v. Calumet City*, 161 Ill.2d 374, 641 N.E.2d 498, 204 Ill.Dec. 274 (1994). Under this rule, conduct is deemed extreme and outrageous where "recitation of the facts to an average member of the community would arouse resentment against the actor and lead him to exclaim 'Outrageous!' ". *Id.* at 392, 641 N.E.2d at 507, 204 Ill.Dec. at 283.

■ Outrageousness is an objective standard, based on the facts and circumstances of the case. It can arise from the abuse of a position of power, which requires the court to assess whether the defendant reasonably believed his objective was legitimate. *Id. citing McGrath v. Fahey*, 126 Ill.2d 78, 533 N.E.2d 806, 127 Ill.Dec. 724 (1988). Applying this rule to debt collection, the Illinois Supreme Court held that a creditor must be given some latitude to pursue reasonable methods of collecting debts even though such methods may result in some inconvenience, embarrassment or annoyance to the debtor. *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 360 N.E.2d 765 4 Ill.Dec. 652 (1976). In *Public Finance*, the court held that the creditor's actions in visiting the debtor's home numerous times weekly, refusing to leave on one occasion, telephoning her numerous times daily, calling her at the hospital when her daughter was ill with a brain tumor, and inducing her to write a bad check by promising not to cash it and then telling her friends that she was writing bad checks, was not sufficiently extreme or outrageous to establish intentional infliction of emotional distress. *Id.* at 91, 360 N.E.2d at 766, 4 Ill.Dec. at 654.

■ Similarly, in the instant case, the Debtor has not alleged sufficient facts to support a finding of outrageous conduct by Providian. Although she has alleged that Providian intended to cause emotional distress and shock by sending its letter, the act of sending the letter is not sufficient to cause an average person to exclaim "outrageous." Furthermore, even if this court found that the language of the letter was threatening and coercive and violated the automatic stay, this does not necessarily establish that Providian committed an act which was an abuse of a position of power in unreasonably pursuing an illegitimate objective. Moreover, even if Providian did abuse its' power, the Debtor still must establish that her damages were severe and not fleeting or inconsequential. Thus, upon the facts established here, the Debtor could not recover for emotional damages under Illinois tort law for intentional infliction of emotional distress. This conclusion further supports the decisions under bankruptcy law discussed above which denied damages for fleeting and inconsequential emotional distress.

## IV. CONCLUSION

The Court hereby finds that there is no genuine issue of material fact and that Providian is entitled to judgment as a matter of law on the issue of actual damage for emotional distress under 11 U.S.C. § 362(h). The record, as a whole, does not contain proof beyond the Debtor's testimony of an emotional injury which was more than merely fleeting or inconsequential distress. There is no corroborative medical evidence. Nor is Providian's conduct in sending the reaffirmation letter sufficiently extreme and egregious for this Court to presume that emotional distress must have been the likely result and thereby impute some reasonable damage award. The Debtor has failed to meet her burden of proof as to actual injury under § 362(h). Providian's motion for summary judgment is therefore granted.